WRIGHT, J.
The facts agreed showthat the plaintiff’s intestate-died the owner of ten shares of the stock of the bank, and was indebted. to the bank on two notes, executed by him as principal, and another as security, according to the customary form of notes for-discount. On one of these notes for $100, the time for payment had expired: the other, for $900, had not run to maturity. The-intestate died insolvent. The plaintiff had money to his credit in-bank, more than sufficient to pay the $100 note, was willing to pay, and offered to transfer the stock on the books, but was refused permission to do so by the officers of the bank, on the ground that the-478] *bank had a lien for the debts, and that the transfer could only be permitted on the payment of the two notes; or discharging-the lien. Upon this refusal suit was brought. The omission to make an actual tender of the $100, we think in noway embarrasses the case; because the refusal to permit the transfer without both notes wore paid, rendered that tender unnecessary. The question,,, therefore, is fairly raised, whether the bank had a lien on the stock to secure the payment of the $900 note, before the time for its payment had expired.
The tenth section of the charter of the bank (30 Ohio Laws, 99) makes the stock transferable only on the books of the bank, in such manner as the directors shall prescribe, and provides that “ no stockholder indebted to the bank for any debt, or demand due and payable, shall transfer until such debt is paid, or collateral security is given for the payment, to the satisfaction of the directors, and said bank shall have the first lien in law, on all stock owned by its debtorsTt seems to us indisputable, that this provision was introduced into the charter, in order to invest the bank with a lien on the stock of a debtor, to secure the payment of any sum for which. *491 he was liable to the bank; a lien having in view the safety of the bank and the public, not to be relinquished unless by the special action of the directors’ dispensing with it, or receiving other satisfactory security, collateral to the obligation evidencing the debt. The assumption, therefore, that the fact of their being security on the obligation of the debtor, does not in our opinion satisfy the provision for a discharge of the lien in this case. The board, for aught that appears in the case, has never prescribed any rules for the transfer of the stock; nor does the case show any act of theirs, having in view the discharge of the lien in this particular case, if it ever existed.
It is urged, however, with great earnestness, that the lien of the bank only attaches to the stock for debts actually due, the time for the payment of which has expired. It is said this debt was not due and payable, andthat it violates the obvious meaning of the language of the act to hold money promised by a note to become due at a future day, due and payable. We do not, perhaps, feel the full force of the plaintiff’s position, but it appears to us untenable. The legislature have provided in the seventeenth section of the act, that the law shall be construed in all courts and places, favorably for any beneficial purpose intended tobe secured by it; and it is a f amili ar rule for construing statutes to give to the language used a meaning, that will carry out the intention of the law maker. What, then, had the legislature in view, in forming the clause in question? It seems *clear, they had in view to give to the bank power to assert a [479 first ox paramount lien, a lien preferable to all others upon the stock-of its debtors; a lien the debtor had no power to discharge, without payment, or the consent of the bank, and the giving other security than that already existing. The law attaches the lien, and«proclaims a prohibition against the discharge, by implication or otherwise, except by an express act of the directoi’s in accepting collateral security. I do not mean that if the transfer were permitted, by a negligent or careless board of directors, that they could recall and vacate the transfer. The lien attaches, and the bank in whose favor it attaches may assert or forego the privilege — having foregone it, no power is retained to recall and re-assert it. The. act is directory upon the directors to assert the lien — if they disobey, other rights may have intervened which the law will not disturb. What beneficial object was to be obtained by this lien? The speedy and certain collection of the debt — an object in which the public is interested, as making more sure to the bank, the means of meeting its own engagements promptly. The construction contended for by the *492 plaintiff to exclude from this lien all debts, where the time fixed for the payment has not expired, would defeat the main object of law, and be subversive of this purpose. It would give to the debtor the power of withdrawing his stock from the lien whenever he chose, by simply applying for the transfer on some day when he had no paper at maturity, or lying over. If the collateral security mentioned, means only the security on the loan, the provision would be inoperative, because useless. If it looked only to debts on which no security or endorser had been given, the answer is, such loans are not made. To limit the lieu to debts accruing to the bank, by other sources than through discounts, would confine it-to cases which seldom or never occur, and which, therefore, cannot be supposed to have elicited the special regard of the legislature. In common acceptation a debt is due and pagable to a person, though the time for payment is not elapsed. We speak of debts due and payable to us without thinking of the time of credit. We secure a debt due by mortgage, though it have years to run. The expressions debt or demand, due and payable, were employed to describe debts or demands in which the bank was the creditor, on which the money was coming to the bank, and to distinguish such from debts due to others, and merely deposited in bank for collection.
There is another consideration connected with the subject — the interest of the securities on the note, and their protection. It is a well-settled rule in equity, that where a creditor holds property in 480] ^pledge as security for debt, and has in addition individual security who is without indemnity, he will be compelled to exhaust his lien, and convert the pledged property, before he resorts to the individual, and can only call on the individual, either to pay and be subrogated to the security, or to make up the deficiency after the pledged property is exhausted. It has been held that if a creditor, by any act of his, impair the security of those collaterally bound to him, he thereby discharges them, either altogether, or for so much as has been lost, to the security. The same principle is decided in Stump v. Rogers, 1 O. 533; Cass v. Adams, 3 O. 223; in 3 O. 260; and in a late case of the Miami Exporting Company v. Bank United States and others, in Hamilton county: (ante 249.)
In no view of the case presented to us, has the plaintiff, by the agreed case, established a right to recover.
Judgment for the defendant